Thank you, your honor. May it please the court.  Law enforcement officers trespassed into the cartilage of Mr. Jaylyn McGhee's home to obtain information that supported the search warrant. The district court erred in finding that the front yard in the area immediately surrounding the home was not cartilage and that the officers lawfully observed the evidence supporting the search warrant from a place that they were legally permitted to be. First of all, his front yard and side yard are both part of the cartilage. I don't think there was any real dispute below that the side yard, which was enclosed by a fence, was part of the cartilage. But Judge Rose held that under Bosby, the front yard was not part of the cartilage. Bosby is distinguishable. In Bosby, the defendant had placed several items for sale in his front yard, inviting the public in to come inspect those items and look at them. When law enforcement officers thought they recognized a stolen motorcycle and entered the front yard to check the bin number. This case is distinguishable. Although the front yard of Mr. McGhee's house was not enclosed by a fence, it is important to consider the uses to which the front yard was put and the reasonable expectation of privacy that a person has in their front yard. What unusual way was it put? I'm sorry, Judge. Can you repeat your question? Well, you said it was the way it was used. Could the mailman walk across the grass at this house like he can in my house? No, Your Honor, because there is a sidewalk going to the front door where the mailbox is at the front door. Well, maybe you've never met a mailman like I have. There's a sidewalk and there's a front walk. And the conventional longer way to do it is go the sidewalk and then up the front walk. Well, in my neighborhood and back when I was a summer mailman, you saved a lot of time for the whole block. You just walked across the lawns and skipped the sidewalk. Can that be done here? It looks to me like it can. I don't think there's any evidence whether it is. The Supreme Court set out in Florida v. Jardines sort of what the implied license is to approach the front door. You have an implied license to approach the front door, knock, wait to see if you're let in, and then leave without doing any further investigating, snooping, anything like that. People don't expect the public to linger in their front yard. There doesn't seem to be a lot of case law on this. Have you found much just on a lawn? Because it seems like, I guess I was a little surprised that it hadn't come up before, because you could imagine lawns of all sorts of sizes. This is relative, I don't know, maybe it's average, maybe it's small. I don't know how to characterize it. But does that matter, if it's a big lawn or a small lawn? Because I think if we find this to be curtilage, would everybody's lawn be curtilage? I think looking at the exhibits that were submitted with the motion to suppress hearing, we can call this a small yard. The area of the yard that the officers were standing in was further separated from the neighbors and shaded by some pretty significant trees. It was a very small yard. But I think, to your point, there's not a lot of case law. The two closest cases are United States v. Chips, 410F3, 438, and United States v. Bosby, 720F3, 652. I've already talked about how Bosby is distinguishable. In Bosby, the defendant invited people into his front yard to inspect items that he had put out for sale. In United States v. Chips, that is a case that involved the yard. The opinion is a little bit vague on the details, but essentially how Chips goes is law enforcement approach the front door for a knock and talk, and they see a trail of blood from where they're lawfully standing at the front door waiting to see if they're granted admission to the house. They follow this trail of blood for, I believe the opinion said 20 to 30 feet, and it's not explicitly stated, but it's implied it's in the yard. They haven't crossed any fences. They haven't gone around the house and find a bloody sweatshirt. So Chips is a case where police officers follow the social customs. They go to the front door, knock and talk and wait, and they're lawfully observing the blood, which they then follow. That's distinguishable from McGee's case. Law enforcement officers went to the front door, didn't receive an answer. A law enforcement officer, Sims... Well, let's talk about Garrett, a case on which you rely considerably. In my view, the Middle District of Alabama judge, it's quite favorable on the question that Judge Kelly posed. A lawn need not be riddled with children's toys to serve as a play area. The fact that the entire yard was maintained in the lawn mode, even under the cars that the district court had said blocked the curtilage, is significant. It indicates some form of use. Further, the backyard is not large, nor was the rear area of the backyard unoccupied or undeveloped. This reasoning applied to a front yard is very favorable to the government's position. Is that a case I relied on, Your Honor? Oh, yes. Oh, indeed. Well, I'd be surprised if... That's the way my notes indicated. Where did I... Where did I get... Well, I only... I only read the case because it was highlighted by somebody. Maybe it was cited. Well, Counsel, what about the fact that there's a difference between this front yard area and the rest of the property because there was a... As I understand it, there was a fence. There was a delineation here, a separation. Now, for me, that means that there's something different about the property in front of the fence, so to speak, and that behind it. There are definitely cases... Do you agree that that reasoning kind of makes some sense? There are definitely cases that follow that line of reasoning, especially with farm property, right? We have cases where there's a barn way over here, and then there's a fenced-in yard around the house over here, and the barn's open field. It's not part of the curtilage, and law enforcement can approach that to investigate because it's not part of the home. But we're not talking about a farm property that's spanning acres here. This is a relatively small lot in the middle of town. Every part of the yard is close to the home, including the front yard where Officer Sims trespassed to look over the fence. So that... What's your best case on the front yard? Small front yard? You can't walk on it? Nobody can walk on it, has an implied license to walk on the grass in a small front yard? I think Florida V. Jardines... That's an inside apartment walkway. It has nothing to do with the front yard. Yes, Your Honor, and we're entering my rebuttal time, but Florida V. Jardines sets what the implied license is. I understand. And then we have the two cases I've discussed previously, Bosby v. Chips, which consider front yard and curtilage questions in this way, but are distinguishable on the facts because officers were lawfully where they were allowed to be when they observed the incriminating evidence. Thank you. Ms. Carey? We'd probably let you sit if that was more comfortable. I appreciate that, but seeing as I'm here and to respect the court, I would be happy to stand. Thank you. May it please the court, Brecklin Carey on behalf of the United States of America. The district court correctly denied Mr. McGee's motion to suppress, and additionally, they did not clearly err in applying the four-level sentencing enhancement. Unless there is specific inquiry from the court, I will be focusing my time today on the motion to suppress issue. The district court did not clearly err in denying the motion to suppress. Officer Sims was not standing in the curtilage of the yard when he observed the contested evidence, and then when he did, that triggered exceptions to the Fourth Amendment that allowed him to follow the blood trail behind the fence. Even if we were to take this evidence away from the search warrant affidavit and application that was later written, there was still ample probable cause. And even if we look outside of the probable cause argument, officers relied on that warrant in good faith. In connection with the motion to suppress, this court reviews the district court's factual findings for clear error and questions of constitutional law de novo. When there are two permissible views of the evidence, there cannot be, it cannot, or excuse me, the ruling cannot be clearly erroneous. When Corporal Sims was standing in Mr. McGee's front yard, he was not standing in the curtilage. To identify when an area is curtilage, there are four factors that we turn to. First, the proximity of the area to claim to be curtilage to the home itself, whether the area is included within an enclosure, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation of people passing by. And I think your next probably assertion will be that most of the factors seem to weigh in favor of not curtilage under the done factors, right? So it seems that the Supreme Court is sort of taking the view that trespass and sort of property rights in that sense are important. How do we grapple with the argument from opposing counsel about the implied license and the trespass when you're talking about clearly a front yard that is attached to this home? I think there's no question. And it could arguably be a trespass. Is that something that we can factor in here in this analysis? Your Honor, I agree that the proximity element is something that weighs towards this being curtilage, but it's the only element. And if you go towards the other three elements, as you already highlighted, it weighs towards not being curtilage. But what about the trespass aspect of it? That sort of seems to be a, it's not a done factor. It's sort of a different conceptual approach to what it is that the officers or anyone would have permission. And it seems to be this, as has been stressed, this license to go to the front door. And there's this path here, and this is the way that I'm inviting you to come to my door. How do we put that together with the done factors in trying to assess this case? Yes. With that, just because there's not an implied license somewhere in the proximity of a home does not then immediately convert that exact same area to being curtilage. In order for it to be determined curtilage or not … And you don't get to the implied license doctrine until there's curtilage. The … This is a threshold question, right? For something to be, to have an implied license, there's the presence of a sidewalk or the invitation to be able to be in that space. But … Well, you have Kelo and other, you know, remote invasions that get into trespass. But the curtilage question, if it isn't curtilage and there wasn't action taken that would otherwise violate the Fourth Amendment … I think there's a space … I don't understand the relevance of this implied license concept. I mean, I … I think that there's a space in between. There can be an implied license to be able to walk up towards the front yard or front door of a home … If he had, if Sims had had to walk through the open gate …  … to see, to see anything that, that was, that triggered reasonable suspicion to go further, then, then you would get into the implied license question, I think. I would agree, Your Honor, because once we go beyond a gate or things that would weigh more heavily towards it being curtilage, that then we would have to do the analysis of was he in a legally objectionable space, then we could talk about was there an implied license or not. But until we determined whether it was curtilage or not, Officer Sims was not standing in an objectionable area. Well, I think … To your point … It doesn't matter that he, whether or not he was invited to stand on the lawn if, if he didn't need to be an invitation. If he was just a kid playing in the neighborhood. I would agree, and to your point earlier about a mailman walking through the yard or excited children on Halloween, there was no enclosure, there was no items that would possibly be in the way of this yard. It was, it was an open area. It was an … There was nothing stopping or inhibiting Corporal Sims from having the thought of, I cannot walk over to this area. Was there, I seem to remember something about a, maybe in addition to the, to the walk, walk up to the door, there was also a, a kind of a worn path, like a trafficked path in the, in the grass. Am I remembering correctly? If there was, I'm not recalling it. A worn, worn walking path in the grass toward the fence at the side of the house. If there's something like that, what does that, does that play into this at all? I would say no, Your Honor, because I still believe that that area is not curtilage, and to Judge Loken's point, until something is determined whether to be curtilage or not. Well, doesn't the worn path confirm that it's not, or support the notion that it's not curtilage? I would agree, Your Honor. But to the point of … I mean, it's probably the homeowner who wore down the path going, going out the front door instead of out the side door, but not necessarily. It could be all kinds of visitors and who are encouraged to do that. I would agree, Your Honor. Which there is a gate between the side door to the front area of this yard, which was left open in this case. But that would have been another aspect of where people were coming in and out and who that possibly would have been. Corporal Sims was not standing in the curtilage of the yard when he observed that blood trail evidence. And when he did observe the blood spatter and the unknown, what appeared to be a powdery substance on those stoops, it then triggered exceptions to the Fourth Amendment. When law enforcement officers arrived, they, of course, were investigating a shooting. What they had seen out in the street were eight shell casings of two different brands. There were suspected controlled substances, either methamphetamine or heroin, loose cash. And then when they go up to the side of the … to the lawn and they see this blood spatter evidence, when they had been canvassing the neighborhood and asking, what happened here? There had been no evidence of … And the knock and announce was not … was not responded. That's correct, Your Honor. And the knock and the announce was being conducted by other officers at the front door while Corporal Sims was standing here at the side of the door. But that knock and announce had already been completed before Corporal Sims took any steps forward. No one had said at that point that anyone had been near the … that side door or would have been available to leave that blood trail. Corporal Sims was allowed to follow that blood trail behind that fence to be able to investigate to see if any victims needed help. I would ask at this point, are there any other specific inquiries from the court on the curtilage issue or how those exceptions were triggered? The one … the inevitable discovery or the … what's the other exception besides … besides the safety for going through the fence? I thought that was a little strained. The exigent circumstances is what allowed him to go beyond the fence. It's simply that then beyond the … Say … what? Say again? Exigent circumstances allowed him to follow that … I thought … I thought there was a … That plays hand in hand with the plain view doctrine. As he was standing in a legally unobjectionable area, as he followed it, it triggered the plain view doctrine as well. Similar to what we would see in United States v. Chips or United States v. Janus, which I detailed more fully in my briefing. Though, I will mention that even if we were to take away this evidence from the search warrant, there was still ample probable cause to be able to go in and search the home. So in that sense, any information or evidence that was within the home would have been discovered at that point as well. Seeing as my time is about to expire, I will ask this court to please affirm Mickey's sentence and conviction. I guess what I was … what I was focusing on is once they had gone through the fence, the other officer, was it King, then saw the blood spatter through the … through the … or opened the side door or saw through the side … open side door a bigger blood splotch. What does … why does that play into this issue on appeal? I see my time has expired. May I briefly answer? I believe that the blood spatter evidence that was outside the door is what's mainly at play in this appeal because Officer Sims, in ensuring that he was trying to protect Mr. McGee's rights, did not continue further into Mr. McGee's home. At that point, he stopped and he obtained a search warrant. If he had gone into the home after observing the blood spatter within the kitchen, my answer might be different. But he didn't. He took a moment, he called another officer to confer, he called detectives talking to Mr. McGee at the hospital to be able to obtain more information, and did all of that before entering the home. So therefore, while officers did see that, what's really at play is just the blood spatter that's on the stoop outside the side door. Thank you, Your Honors. Oh, he looked through the side door window … That's correct, Your Honor. … and saw a blood splatter. Yes. The door was never opened. But I gather that after that becomes part of the facts, it doesn't play into the argument. That's correct, Your Honor. Thank you. Thank you. Ms. Rubau? Thank you, Your Honors. I'd like to start by picking up where Judge Kelly left off about how the implied license works with the done factors. The implied license is consistent with the done factors, and the done factors are a non-exclusive totality of the circumstances test. The implied license helps us interpret the done factors. The uses to which the yard are put are consistent with what we expect people to do when they're in our yards, in our space. You see that in the Bosby case, where the essentially defendant is having what appears to be a yard sale or a rummage sale, but for the invitation into the front yard, that very well could have been curtilage. Jardine's is also a curtilage case. To follow up on the questions about how trespass and curtilage play in together, if something is curtilage, then exceeding that implied license is a trespass. The Supreme Court has repeatedly said the reasonable expectation test in Katz is important, but it doesn't destroy the case law about the Fourth Amendment protections around the home being sacrosanct and trespasses into protected areas not being permitted. Looking at Mr. McGee's front yard, this is part of the record, Exhibit C, that was filed in this case. It's an incredibly small front yard. There's landscaping, I believe those are some hostas, dividing it from the neighbors, there's trees which provide privacy, and there's a clear path going to the front door, there's no clear path going to the side yard. If you look at Government Exhibit 4, which is also part of the record. Was there a worn path through the grass? There was no testimony about a worn path to my very best recollection. I don't believe there's any testimony about that. I can't answer that without speculating, Judge. To me, it just looks like a line of hostas. I see my time has expired. I just briefly ask that you reverse the conviction and remand for further proceedings. Thank you. Thank you. The case has been well briefed and argued. It's an interesting, unusual question and we'll take it under advisement.